(59 Misc. Rep. 289.)

ROBBINS v. CLOCK.

(Supreme Court, Special Term, Nassau County.   May, 1908.)

1. SPECIFIC PERFORMANCE—CONTRACT—VALUE OF PROPERTY.

Where defendant, owning 45 lots, and unable to get $10 each for them, accepted from plaintiff through defendant's agent, who was plaintiff's cousin, an offer of $350 for the whole property and a strip of land running along a highway, and there was no proof of fraud practiced on defendant, plaintiff was entitled to a decree of specific performance as to the lots, though they were worth according to expert testimony sums varying from $750 to $10,000.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Specific Performance, §§ 141–151.]

2. SAME—DEFENSES—LACHES.

A delay of 14 months in bringing suit for specific performance after the right of action accrued did not constitute such laches as defeated plaintiff's right to relief.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Specific Performance, §§ 328–331.]

3. SAME—DESCRIPTION.

Where, in a suit for specific performance of a land contract, there was no dispute as to the extra property, which was the subject of the contract, it was no defense that the contract misdescribed the land as located in Suffolk, instead of Nassau, county.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Specific Performance, § 363.]

Action by John Clinton Robbins against Ellen D. Clock for specific performance of a land contract.   Judgment for plaintiff for part of the relief demanded.

Nicoll & Young, for plaintiff.
Alfred W. Varian, for defendant.

CARR, J.   This is an action for specific performance of a contract to convey real property, or, in the alternative, for damages for breach of contract, if specific performance cannot be decreed.   The defendant has refused to perform, principally on the ground that the contract was procured by false and fraudulent representations as to the value of the property on the part of the vendee or his privies.   The contract was signed by the defendant about February 19, 1906, while she was residing in the state of Florida.   The land in question is located in Nassau county, N. Y., near the village of Amityville.   The defendant is a woman of 70 years of age, but, as she appeared on the witness stand, of unimpaired faculties and considerable natural talents and shrewdness.   At the time the contract was made she resided with her daughter and son-in-law at West Palm Beach, Fla.   It was forwarded to her by mail for execution, and signed, acknowledged, and returned by her.   It was not the result of a sudden impulse, and there was at least some time for reflection.   It covered some 45 lots of land, and, in addition, a long strip of land running along a public highway, and but 10 feet in width.   The specific consideration was the sum of $350.   She claims to be entitled to be relieved from this contract because one Jeremiah Robbins, who she says was acting for the plaintiff, had represented to her that the land was of but little value, whereas, in fact,·

it was worth upward of $10,000. There is no proof that Jeremiah Robbins was acting for the plaintiff in any statements he made to the defendant as to the value of the property. He was a cousin of the plaintiff, it is true, but this fact is not sufficient to raise any presumption against the plaintiff. In nearly all these Long Island communities there is a great degree of interrelation between the inhabitants, and the residents are blessed with an unusually large number of cousins of various degrees among their neighbors. Furthermore, Jeremiah Robbins was the agent for the defendant to sell the property, and became so through the express solicitation of the defendant herself and her son-in-law, who was acting on her behalf. Jeremiah Robbins did not intrude himself upon the defendant at all. She appears to have known the property well for years past. She has been anxious to sell it through other agencies at the rate of $10 a lot for the 45 lots. Being unable to get this price for it during her endeavors of several years, she put it in charge of Jeremiah Robbins at the same asking price. He submitted an offer of $350 for the whole property, provided the strip along the highway was thrown in. This offer she accepted, and she entered into a formal written contract of sale. It turned out subsequently that the 45 lots and the strip of land was worth considerably more than the purchase price, varying in value from the sum of $750 to an amount in the neighborhood of $10,000, according to the expert testimony on the trial. There is no proof whatever of any fraud having been practiced upon her by this plaintiff or any person with whose acts he is chargeable. So far as she seeks to avoid the contract on the ground of fraud she fails completely to make out a case.

It is urged, however, that equity will not decree specific performance of a contract to convey land where there is so great a difference between the agreed price and the actual market value as to render the position of the vendor inequitable from the point of view of the hardness of the bargain. Many authorities have been cited by the defendant to this effect. When the systems of law and equity were distinct, there was such a rule unquestionably. Whether the rule has any present force is vey doubtful. When equitable relief was refused formerly, it was only for the purpose of relegating the parties to their remedy at law. Now, however, since the two systems have been united, the court which has acquired jurisdiction in an equitable action will retain the case and adjust the legal rights of the parties, if equitable relief be found impracticable under the circumstances of the case. Miller v. Edison Electric Light Co., 184 N. Y. 17, 76 N. E. 734, 3 L. R. A. (N. S.) 1060. The difference in the respective values placed upon the land in question is astounding. Much of it is due to valuations made of the 10 foot wide highway strip, which the defendant's expert appraises at $3,700, and the plaintiff's expert at $37. The plaintiff, however, does not ask specific performance as to this strip, having on the trial expressly eliminated it from his demand, because of some uncertainty of title. It will therefore be omitted from consideration now. As to the remaining 45 lots there is again a conflict between the experts. The plaintiff's witness appraises them at $720 in bulk, while the defendant's witness places their value at sev-

eral thousand dollars. This latter valuation seems to me far-fetched in the extreme, and I cannot accept it as established.

Apparently, however, the vendor sold for a price much less than the actual value, but this fact would not in itself alone constitute a defense even in equity. Losee v. Morey, 57 Barb. 561. At law it would be no defense at all concededly in the absence of fraud. In this action the plaintiff is entitled either to specific performance or to his damages. His damages would embrace those covered by the loss of his bargain. Pumpelly v. Phelps, 40 N. Y. 59, 100 Am. Dec. 463; Sloan v. Baird, 162 N. Y. 327, 56 N. E. 752; Marsh v. Johnston (Sup.) 109 N. Y. Supp. 1106. According to the plaintiff's proof, such damages would not be less than $370; while, according to the defendant's proof, they would exceed several thousand dollars. In either event the defendant would be similarly affected, whatever be the remedy applied. The defendant relies upon Margraf v. Muir, 57 N. Y. 155, as indicating a different rule. That case, however, distinctly recognizes the rule now existing that, in an action for specific performance, the damages may be adjusted in the action, if specific performance be refused as impracticable. There specific performance could not be granted for the very important reason that the vendor did not own the property in question, having only a dower interest therein. It is true that the court assigns also other reasons; but if these reasons did not exist, specific performance could not have been granted. It lays down, however, a different rule of damages, applicable only to the peculiar facts of that case and not constituting a general rule. Marsh v. Johnston, ut supra. I do not see how the position of the defendant can be improved in this case by a refusal of specific performance and an admeasurement of the damages recoverable. Under these circumstances specific performance should not be refused.

The defendant further resists the relief sought by the plaintiff on the ground of laches. This action was not brought until 14 months after the right of action accrued. In my opinion this delay was not sufficient to deprive the plaintiff of his rights. Covart v. Johnston, 61 Hun, 622, 15 N. Y. Supp. 785, Id., 137 N. Y. 560, 33 N. E. 338, is cited to the contrary. That case was decided on several grounds, and the question of laches was intermingled with other questions which controlled the decision.

Nor do I think that the objection urged by the defendant as to the fact that in the contract between the parties the land is described as being in Suffolk county presents any insuperable difficulty to the plaintiff's relief. This contract was the result of considerable correspondence between the parties. The land lay in a neighborhood, generally known as Amityville, near the dividing line between Nassau and Suffolk counties. Both parties had clearly in mind the identical property, and there was no mistake between them as to what they were dealing with. Under these circumstances the use of the word "Suffolk" instead of "Nassau" is too insignificant a variation to render this case subject to the authorities cited by the defendant.

Judgment is therefore directed for the plaintiff, except as to the strip of land running along the highway.

Judgment for plaintiff.